# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CARL L. GRAYSON, | ) |
| Plaintiff, | ) |
| vs. | ) CA 17-0455-MU |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carl L. Grayson brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a Period of Disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), based on disability. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 22. Upon consideration of the administrative record, Grayson's brief, the Commissioner's brief, all other documents of record, and

oral argument, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

On May 20, 2013, Grayson applied for a Period of Disability and DIB, under Title II of the Social Security Act, and for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, alleging disability beginning on December 31, 2012. (Tr. 312-327). After his application was denied at the initial level of administrative review on September 24, 2013, Grayson requested a hearing by an Administrative Law Judge (ALJ). (Tr. 139-43; 152-53). After an initial hearing was held on November 5, 2014 before ALJ Renee Blackmon Hagler, but no decision issued, a second hearing was held before ALJ L. Dawn Pischek on February 10, 2016. (Tr. 87-120; 68-86). After ALJ Pischek conducted a supplemental hearing on May 11, 2016, she issued a decision denying Grayson's claims on August 25, 2016. (Tr. 50-67; 21-42). Grayson appealed the ALJ's decision to the Appeals Council, which denied his request for review on September 7, 2017. (Tr. 1-3).

After exhausting his administrative remedies, Grayson sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on January 16, 2018. (Docs. 10, 11). On February 5, 2018, Grayson filed a brief in support of his claim. (Doc. 12). The Commissioner filed her brief on May 17, 2018. (Doc. 16). Oral argument was held

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

before the undersigned Magistrate Judge on August 8, 2018. (Doc. 20). The case is now ripe for decision.

## II. CLAIMS ON APPEAL

Grayson presents the following claims in this appeal:

1. Whether the ALJ committed reversible error in violation of Social Security Rulings 96-8p and 96-6p by failing to assess mental limitations when formulating Grayson's Residual Functional Capacity (RFC) despite finding that he had the severe impairments of borderline intellectual functioning and adjustment disorder; and

2. Whether the ALJ's RFC determination was supported by substantial evidence. (Doc. 12 at p. 2).

## III. BACKGROUND FACTS

Grayson was born on January 25, 1962, making him 51 years old at the time he filed his claim for benefits. (Tr. 312). Grayson initially alleged disability due to sleep apnea, insomnia, high blood pressure, weak heart, forgetfulness, allergies, asthma, borderline diabetes, and headaches. (Tr. 362). He left high school during 12th grade in 1980, after having attended primarily regular classes, but not performing well, when he was in school. (Tr. 91-92, 355, 363). He has not completed any type of specialized job training, trade, or vocational school. (Tr. 92, 363). He worked until 2011 as a cement finisher and from February to December of 2012 as a stocker at Wal-Mart. (Tr. 93-94, 363). He stated that he lost his most recent job due to job performance issues that arose because of the problems associated with his sleep apnea and insomnia. (Tr. 598).

Grayson generally handles his own personal care. (Tr. 100, 384). During the relevant period here, he lived with his mom. (Tr. 71-72, 91, 383). According to Grayson, his mom cooks all of his meals, does all of the shopping, and takes care of household tasks. (Tr. 100, 385-86). He does not pay bills, handle a savings account, or use a checkbook or money orders because he sometimes makes mistakes with his money and his mom does everything for him. (Tr. 386-87). He spends his time watching television and talking to his mom and children. (Tr. 101, 387). He alleges that he cannot pay attention for long because he falls asleep and that he cannot follow written instructions, but can follow spoken instructions if they are repeated. (Tr. 388). He gets along with authority figures and other people, but does not handle stress or changes in routine well. (Tr. 389).

Grayson testified at the first hearing in November of 2014 that he cannot do his prior jobs because of problems with his back, knees, sleep apnea, and dizzy spells. (Tr. 95, 103-04). At the second hearing in February of 2016, he continued to complain of problems with his back, knees, sleep apnea, and dizziness. (Tr. 72). At the time of both hearings, he used a cane to assist with walking. (Tr. 76-77). After conducting the hearing in February of 2016 and a supplemental hearing in May of 2016, the ALJ made a determination that Grayson had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 21-).

## **IV. ALJ'S DECISION**

In her August 25, 2016 decision, the ALJ found that Grayson had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees and hips, hypertension, obesity, borderline intellectual functioning, and adjustment

4

disorder. (Tr. 23-24). She found that his sleep apnea was controlled and, therefore, not severe. (Tr. 24). She also found that his history of TIA, vertigo, neuropathy, headaches, asthma, COPD, allergies, sinusitis, hypercholesterolemia, and alcohol use disorder are non-severe impairments. (Tr. 25). After considering the record, the ALJ found that Grayson has the following RFC:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can stand one hour at a time or two hours total in an 8-hour workday; walk one hour at a time or two hours total; sit two hours at a time or six hours total; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently handle, finger, feel, push, and pull; continuously reach; frequently operate foot controls; never be exposed to unprotected heights; occasionally be exposed to moving mechanical parts, operating a motor vehicle, humidity, wetness and vibration; and perform simple, routine tasks in two-hour increments with normal breaks for the duration of an eight-hour workday.

(Tr. 30). Based upon this RFC, the ALJ concluded, based upon the testimony from two Vocational Experts (VE) at the hearings, that Grayson, while unable to perform any past relevant work, can perform jobs that exist in significant numbers in the national economy. (Tr. 39-40). Accordingly, the ALJ found that Grayson had not been under a disability, as defined in the Act, from December 31, 2012 to the date of her decision. (Tr. 41).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

5

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Grayson asserts two grounds in support of his contention that the ALJ erred in concluding that he was not entitled to benefits: 1) the ALJ committed reversible error in violation of Social Security Rulings 96-8p and 96-6p by failing to assess mental limitations when formulating his Residual Functional Capacity (RFC) despite finding that he had the severe impairment of borderline intellectual functioning and adjustment disorder and 2) the ALJ's determination of his RFC was not supported by substantial evidence. (Doc. 12 at p. 2). Conversely, the Commissioner asserts that the ALJ properly applied the five-step sequential process in making her determination. The Court will address each of these issues in the order presented by Grayson.

**A. Failure to Assess Mental Limitations**

Grayson asserts that the ALJ erred because she failed to assess mental limitations in Grayson's RFC despite finding that he had the severe impairments of borderline intellectual functioning and adjustment disorder. Grayson's argument in this regard is factually incorrect. The ALJ did, as explained in her decision, take into account

Grayson's mental limitations by assessing him as having the RFC to perform light work with some exceptions, including the limitation to "simple, routine tasks for two-hour increments with normal breaks for the duration of an eight-hour workday." (Tr. 34). Grayson specifically argues that the RFC determination did not take into account the ALJ's finding of a moderate limitation in concentration, persistence, and pace ("CPP") or his limitations in interacting with others.

As discussed by the ALJ, a review of the record reveals that the ALJ was presented with multiple opinions regarding Grayson's mental functional limitations. (*See* overview of records provided by ALJ at Tr. 32-34). In this case, the ALJ discussed the medical evidence in detail, including the weight accorded to the medical opinion evidence and the grounds therefor. (Tr. 31-39). The ALJ also described the information provided by Grayson in his Function Report and at the hearing concerning his limitations and activities, as well as the functional abilities noted by his various physicians. (Tr. 30-39). With regard to his ability to interact with others, the ALJ found that he had only mild difficulties with social functioning. (Tr. 27). The Court further notes that Grayson stated in his Function Report that he gets along with authority figures and other people (Tr. 389). Accordingly, the Court finds no error in the ALJ not including any limitations in interacting with others in the RFC.

On September 16, 2013, Dr. Jennifer Jackson performed a mental examination on Grayson. (Tr. 600-04). Dr. Jackson noted that Grayson was appropriately dressed and groomed, displayed no obvious difficulties with fine or gross motor skills, was generally pleasant and cooperative, displayed no unusual behaviors, exhibited easily understood speech, and had appropriate mood and affect. (Tr. 601). With regard to

8

concentration and attention, Grayson was able to subtract serial 4's correctly, he could add 4 plus 6 and subtract 6 from 10, he could count backward from 20 to 1, and could spell "world" backward. (*Id.*). Grayson was seen, at his attorney's request, by Dr. Kendra LaConsay for a psychological evaluation on September 29, 2014. (Tr. 651-660). She noted that his hygiene and grooming were adequate, he was attired in clothing that was appropriate to the occasion, he appeared tired and had a head cold, he was alert and fully oriented, his attention and concentration were adequate, eye contact was both established and maintained, he was able to clearly communicate in a coherent and relevant manner, he spoke slowly, with normal tone and inflection, and he was cooperative. (Tr. 651-52). After conducting both the WAIS-IV and WRAT-4 intelligence tests, Dr. LaConsay diagnosed Grayson with a mild intellectual disability. (Tr. 652-54). Dr. LaConsay completed a Mental Residual Functional Capacity Questionnaire in which she marked that Grayson had a "Constant" deficiency of concentration, persistence, or pace that causes a failure to complete tasks in a timely and appropriate manner. (Tr. 655). She also noted on the form that he had marked restriction of activities of daily living, marked degree of difficulty in maintaining social functioning, and marked limitations in the ability to understand, carry out, and remember instructions, respond appropriately to supervision, respond appropriately to co-workers, and perform simple tasks; extreme limitations in the ability to complete work related activities in a normal workday or workweek and to respond appropriately to customary work pressures; and a moderate limitation in the ability to perform repetitive tasks. (Tr. 655-56). The only explanation she offered to explain her reasoning for these conclusions, which appear to vary greatly from her exam observations and notations, as well as with Grayson's own

9

testimony and observations of his other physicians, was that his chronic pain, depression, and constant fatigue interfere greatly with his ability to keep focused, follow through, and to relate effectively with others. (Tr. 656). The Court agrees with the ALJ that Dr. LaConsay's MRFC questionnaire should be given little weight due to both internal and external inconsistencies. Dr. LaConsay noted that Grayson had a head cold when she evaluated him, yet did not appear to take that into account when making her conclusions.

Grayson was evaluated by Dr. Kenneth Starkey on January 13, 2016 for a psychological evaluation. Dr. Starkey noted that Grayson can feed, dress, groom, and bathe himself, can manage small amounts of money, can prepare meals, can use a telephone, can make common purchases, and can drive for short distances, all without assistance. (Tr. 700). Grayson drove himself to the evaluation, arrived on time, his hygiene was good, his appearance was neat, he was somewhat lethargic, but oriented to person, place, time, day, date, and purpose for the meeting, he was able to focus and sustain attention, with mild and intermittent distraction from extraneous stimuli, he completed the serial 3s task without error, accurately spelled "world" backwards, correctly added 3 plus 4 and subtracted $0.17 from $1.00, his speech was clear and coherent and of appropriate rate and volume, his ability to focus and sustain attention appeared adequate, and his intellectual functioning was estimated to be in the low borderline range. (Tr. 701). In the Medical Source Statement he completed, Dr. Starkey opined that Grayson has no limitations in the ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related

decisions, but that his deficits may limit his attention to complex instructions and tasks. (Tr. 697).

Even though the medical opinions varied somewhat regarding the extent of Grayson's ability to concentrate, to focus, and to sustain attention, the ALJ conservatively concluded that Grayson has moderate difficulties in CPP. (Tr. 27-28). Having noted those difficulties, the ALJ limited Grayson to light work with the additional restriction of simple, routine tasks. The Court finds that the limitation in the RFC to simple, routine tasks adequately accounts for any limitation Grayson exhibited in CPP.

**B.  Determination of RFC**

After concluding that Grayson had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees and hips, hypertension, obesity, borderline intellectual functioning, and adjustment disorder (Tr. 23-24), the ALJ found Grayson to have the RFC to perform a limited range of light work. (Tr. 30). A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's

RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those which are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3. The ALJ is exclusively responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

Grayson seems to argue that the RFC is not supported by substantial evidence because of medical findings that show he suffers from degenerative joint disease in his back, knees, and hip which limit his ability to walk and stand. However, the ALJ did find those to be severe impairments and included the limitations set forth by Drs. Dempsey and Schosheim in the RFC. (Tr. 37, 38-39, 671-74, 727-30). There is no consistent medical evidence cited by Grayson which supports more stringent limitations. The Court also notes that other examining physicians assessed no limitations due to these issues. (Tr. 35, 36, 37, 599, 668, 681-82).

Having reviewed the evidence and considered the arguments made by Grayson and being mindful of the admonishment that the reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner, the Court finds that the RFC assessment made by the ALJ was supported by substantial evidence.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Grayson

is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **13th** day of **August, 2018**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**